UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 09/29/2023
```

-------------------------------------------------------------------X
:
KARIM ANNABI,                                    :
:
Plaintiff,                   :
:                   22-cv-3795 (LJL)
-v-                                :
:                   OPINION AND ORDER
NEW YORK UNIVERSITY,                             :
:
Defendant.                   :
:
-------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

Defendant New York University ("Defendant" or "NYU") moves, pursuant to Federal

Rule of Civil Procedure 12(b)(1) and (6), to dismiss the first amended complaint, Dkt. No. 37

("Amended Complaint"), of plaintiff Karim Annabi ("Plaintiff" or "Annabi"). Dkt. No. 46.

Plaintiff, proceeding pro se, brings claims alleging: (1) breach of implied contract; (2) breach of

a constructive or fiduciary trust; (3) breach of covenant of good faith and fair dealing; (4)

common law fraud, constructive fraud, negligent misrepresentation, promissory estoppel, unjust

enrichment, and breach of a fiduciary duty; (5) breach of Title VI of the Civil Rights Act and

various subparts; (6) breach of the Civil Rights Restoration Act of 1987, also known as the

"Grove City Bill"; (7) breach of the Age Discrimination Act of 1975 ("ADA"); (8) breach of the

New York City Human Rights Law ("NYCHRL"); (9) breach of the New York State Human

Rights Law ("NYSHRL"); (10) breach of New York General Business Law § 349 (the

"Deceptive Practices Act"); (11) breach of New York General Business Law § 350, and 350-a

(the "False Advertising Act"); (12) breach of the Federal Lanham Act 15 U.S.C. § 1125(a); and

(13) breach of 42 U.S. Code § 1981. Dkt. No. 37. Plaintiff also requests an injunction for

"equitable relief." *Id.* Defendant argues that Plaintiff's allegations fail to state a claim for relief

and that, in addition, his fraud claim failed to plead fraud with particularity.  *See generally* Dkt. No. 48.

For the following reasons, the Court grants Defendant's motion to dismiss.

## BACKGROUND

The following facts are taken from the Amended Complaint and the documents attached to the complaint and are taken as true for the purposes of this motion to dismiss.[1]

Annabi is a graduate of NYU.  Factual Allegations ¶ 20.  He received a Bachelor of Science ("BS") degree in 2003 and a Master of Business Administration ("MBA") degree in 2010.  *Id.*  Over the course of his time at NYU, Annabi paid the school several hundred thousand dollars in tuition, housing, books, fees, and other expenses.  *Id.*  Annabi also is an immigrant to the United States from Algeria, and is a Muslim.  *Id.*

In 2020, Annabi founded "Activate" a "social benefit network" that operates as a for-profit social enterprise and allocates 99% of its profits to ninety-nine organizations.  *Id.* ¶¶ 24–25.  The recipient organizations include the Boys and Girls Club of America, the Salvation Army, the Sierra Club, the Oprah Winfrey Foundation, the Equal Justice Initiative, and others.  *Id.* ¶ 35.  Annabi founded Activate to "share future profits with society in a way that aligns the global public's moral and financial incentives."  *Id.*  According to Annabi, Activate utilizes novel and proprietary social media tools to advance its goals.  *Id.*

---

[1] Plaintiff's Amended Complaint filed on November 9, 2022, Dkt. No. 37, contains numbered paragraphs that restart at paragraph number one at the beginning of each section.  For example, the Basis for Complaint section spanning pages one through seven, contains sixteen numbered paragraphs comprising Plaintiff's claims.  *Id.* at ECF pp. 1–7.  The numbered paragraphs contained in the Basis for Complaint will be cited as "Basis for Complaint ¶" followed by the paragraph number.  The numbered paragraphs contained in the Parties to the Complaint section of the Amended Complaint, *id.* at ECF pp. 11–57—which contains Plaintiff's factual allegations—will be cited as "Factual Allegations ¶" followed by the paragraph number.  Where the Court references other sections of the Amended Complaint, it will do so by referencing the relevant page number.

In the middle of 2021, a decade after Annabi's graduation, NYU began to advertise, and subsequently conducted, its second Designership Hackathon Contest ("Hackathon").  *Id.* ¶ 26. The Hackathon seeks to provide "an opportunity for NYU founders to collaborate with . . . designers in an exciting and intense 3-day event culminating in a usable prototype or [Minimum Viable Product]."  *Id.* ¶ 32.

On September 30, 2021, Annabi submitted Activate to the Hackathon contest.  *Id.* ¶ 31. On October 13, 2021, Annabi was notified that he had not been selected to advance in the Hackathon contest in an email that stated:  "The ventures selected were those with the strongest demonstrations of problem-solution fit and alignment with the specific goals of the hackathon. While we are unable to offer Activate a spot in this year's hackathon, please know that the Berkley Center for Entrepreneurship [("Berkley Center")] is committed to helping you advance your venture."  *Id* ¶ 36.  Most of the teams selected as winners of the 2021 Hackathon contest featured undergraduate students.  *Id.* ¶ 39.

NYU also advertises and operates its flagship Entrepreneur's Challenge ("Challenge"), which has been in operation for over twenty years.  *Id.* ¶ 26.  Over the past ten years, the Challenge has grown to feature over 150 ventures and 500 contestants each year, offering at least $200,000 in prize money.  *Id.*  Promotional materials for the Challenge state that its primary goal is to "support and provide guidance to all the students, alumni[,] faculty and researchers who really want to create something new in the world of business" and a secondary goal is to "identify and reward those ventures being developed inside of the university and inside of the NYU community with the greatest potential to not only become viable businesses, but more importantly disruptive ones."  *Id.* ¶ 21.  NYU states that it considers the following factors in determining the Challenge's award winners:  "1) Ventures that are world positive / solving a

worthwhile problem, 2) capable of demonstrating progress through a working prototype, traction, or other means, 3) having the potential to achieve tremendous scale, 4) having strong founding teams, 4) having strong connections to NYU."  *Id.* ¶ 58.  Leading up to the 2021 edition of the Challenge, NYU advertised on its website that it would be selecting between twenty-five and thirty-five winners, who would receive prizes including one-on-one coaching, prototyping grants, pro bono services from corporate sponsors, and up to $100,000 in investment capital to be awarded in each venture category.  *Id.* ¶ 44.[2]  It is also a tradition that the winner of the Challenge is celebrated with a bottle of champagne, which is sponsored by the Challenge's alcohol sponsor Veuve Cliquot.  *Id.* ¶ 47.

On November 3, 2021, Annabi submitted Activate into the Challenge and paid the requisite $100 entry fee.  *Id.* ¶ 41.  Activate applied for the Challenge as a for-profit business, despite its pledge to donate 99% of its profits to organizations aligned with its missions.  *Id.* ¶ 57.  Shortly thereafter, Annabi was notified that he had been rejected.  *Id.* ¶ 71.  The rejection notice that he received stated in part:  "[T]he teams that were selected were deemed to have had the strongest rationales for how to create, deliver, and capture value in their markets."  *Id.*  Evaluators provided anonymous feedback on Activate, including that the startup was "extremely broad and vague," that the "application description doesn't hone in on a key problem that the market is facing right now, rather, it presents the entire world's issues in a sort of hodgepodge of random issues that needs to be fixed," and that "it's unclear what the solution is, how it will make money, how it will work, and what it will do."  Dkt. No. 37-1 at 65.  Another evaluator stated, "[i]t's unclear why anyone would pay for this or what it actually is."  *Id.*  On December 1,

---

[2] The $100,000 award would be granted in the form of a "KISS" agreement, which gives NYU a note convertible into preferred stock in the venture at a later date.  Factual Allegations ¶ 56.

2021, NYU circulated an email announcing the twenty-two winners that the Berkley Center had selected as winners of the Challenge.  Factual Allegations ¶ 74.

Annabi became unable to utilize the resources available at NYU's Berkley Center in late October or early November 2021.  *Id.* ¶ 37.  On November 12, 2021, an appointment that Annabi had to access the Berkley Center's resources was cancelled.  *Id.*  When Annabi tried to re-book the appointment, he received error messages.  *Id.*  On November 30, 2021, the director of the Berkley Center emailed Annabi confirming that he was no longer able to reserve appointments at the Berkley Center, stating, "[o]ur records show you've had 8 appointments over the past several weeks with our start-up experts.  While we're glad you're finding the Berkley Center's Startup Advising services helpful, we must cap access to this very limited resource."  *Id.* ¶ 67.

## PROCEDURAL HISTORY

On May 9, 2022, Plaintiff, acting pro se, filed his initial complaint against the New York University Stern School of Business.  Dkt. No. 1.  Plaintiff alleged that NYU committed breaches of implied contracts relating to his BS and MBA degrees; breaches of implied contracts relating to the Hackathon and the Challenge; violations of state and federal age, race, and religious discrimination laws; violations of state and federal laws governing false advertising; violations of FCC and FTC regulations governing skilled contests; violations of state laws governing alcohol service to minors; and violations of federal law governing marketing of medical products.  Dkt. No. 1-1 at 2–5.

On July 26, 2022, Defendant filed a motion to dismiss the complaint, along with a memorandum of law and affidavit in support of the motion.  Dkt. Nos. 19–21.

Plaintiff filed the Amended Complaint on November 9, 2022, which contained a number of new claims.[3]  Dkt. No. 37.  Plaintiff's Amended Complaint brings claims against NYU for: (1) breach of implied contract relating to his BS and MBA degrees, and relating to the Hackathon and the Challenge; (2) breach of a constructive or fiduciary trust; (3) breach of covenant of good faith and fair dealing; (4) common law fraud, constructive fraud, negligent misrepresentation, promissory estoppel, unjust enrichment, and breach of a fiduciary duty; (5) violation of Title VI of the Civil Rights Act; (6) violation of the Civil Rights Restoration Act of 1987, or the "Grove City Bill"; (7) violation of the ADA; (8) violation of the NYCHRL; (9) violation of the NYSHRL; (10) violation of the Deceptive Practices Act; (11) violation of the False Advertising Act; (12) violation of the Federal Lanham Act, 15 U.S.C. § 1125(a); and (13) violation of 42 U.S. Code § 1981.  *Id.* at ECF pp. 1–7.[4]  Plaintiff seeks injunctive relief that would, among other things, delay the 2022–2023 Challenge, order NYU to re-administer the 2021–2022 Challenge, order the President of NYU to issue an apology to the public regarding the alleged misconduct, order that NYU make accessible to Annabi entrepreneurship support, and order that NYU change its website and promotional materials. *Id.* at ECF pp. 57–58.  Plaintiff also seeks compensatory and punitive damages.  *Id.* at ECF pp. 58– 59.

Plaintiff moved for an injunction to freeze the 2022–2023 Challenge competition on November 21, 2022 in light of his claims.  Dkt. No. 42.  On December 5, 2022, Defendant filed a memorandum of law in opposition to the motion for an injunction.  Dkt. No. 43.  On December 6, 2022, the Court denied Plaintiff's motion for an injunction, finding that Plaintiff failed to establish

---

[3] Defendant's motion to dismiss Plaintiff's initial complaint was denied as moot after Plaintiff filed his Amended Complaint.  Dkt. No. 41.
[4] Plaintiff also states that Defendant has violated regulations of the FCC and FTC and other agencies but does not bring claims for those violations.  Dkt. No. 37 at ECF p. 7.

either a likelihood of success on the merits of his claims or that he would suffer irreparable harm in the event that the competition proceeded.  Dkt. No. 44.

On January 13, 2023, Defendant filed its motion to dismiss to the Amended Complaint and a memorandum of law and affirmation in support of the motion.  Dkt. Nos. 46–48.  On February 23, 2023, Plaintiff filed a memorandum of law in opposition to Defendant's motion to dismiss.  Dkt. No. 59.  On March 10, 2023, Defendant filed a reply memorandum of law in support of its motion to dismiss.  Dkt. No. 61.

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555, 557.  The ultimate question is whether "[a] claim has facial plausibility, [*i.e.*,] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]." *Twombly*, 550 U.S. at 556; *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

The Court construes pro se pleadings broadly and liberally, interpreting them so as to raise the strongest arguments they suggest. *See Abbas v. Dixon*, 40 F.3d 636, 639 (2d Cir. 2007);

*Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000).  This obligation "is especially true when

dealing with pro se complaints alleging civil rights violations." *Weixel v. Bd. of Educ. of City of*

*N.Y.*, 287 F.3d 138, 146 (2d Cir. 2002); *see also Weinstein v. Albright*, 261 F.3d 127, 132

(2d Cir. 2001) (same).  However, while the Court construes pro se pleadings liberally, this does

not relieve pro se plaintiffs of the requirement that they plead enough facts to "nudg[e] their

claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.  Nor does it

relieve them of the obligation to otherwise comply with the pleading standards set forth by the

Federal Rules of Civil Procedure.  *See Saidin v. N.Y.C. Dep't of Educ.*, 498 F. Supp. 2d 683, 687

(S.D.N.Y. 2007).  "Thus, the Court's 'duty to liberally construe a plaintiff's complaint is not the

equivalent of a duty to re-write it.'"  *Davila v. Lang*, 343 F. Supp. 3d 254, 266 (S.D.N.Y. 2018)

(quoting *Geldzahler v. New York Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009)).

## DISCUSSION

Although Plaintiff brings a number of claims against Defendant, his primary complaint is

that Defendant failed to select his startup, Activate, as winner of either its Hackathon or

Challenge contests, and wrongfully denied him access to certain entrepreneurship benefits

largely available to members of the NYU community.  Dkt. No. 37.  He alleges that Defendant is

liable for breach of contract and in quasi-contract and that its conduct was tortious and

constituted unlawful discrimination.

Defendant seeks to dismiss all of Plaintiff's claims.  Dkt. No. 48.  Defendant argues, as

initial matters, that Plaintiff's Amended Complaint should be dismissed for violating the

pleading requirements of Federal Rule of Civil Procedure 8, and for relying on conclusory and

unsubstantiated allegations to support his claims.  *Id.* at 2.  Defendant further argues that

Plaintiff's breach of contract claims should be dismissed because attending a university does not

create a binding and enforceable contract, the employee handbook is not a binding and

enforceable contract, NYU did not materially breach any terms of any alleged contract or promise, and any alleged promises were insufficient to state a viable claim. *Id.* Defendant argues that Plaintiff's fraud claims should be dismissed because the claims are a restatement of his breach of contract claims, and because Plaintiff has failed to plead his fraud claims with the requisite particularity. *Id.* Additionally, Defendant argues that Plaintiff's breach of fiduciary trust, breach of implied covenant of good faith and fair dealing, promissory estoppel, and unjust enrichment claims are also duplicative of Plaintiff's breach of contract claim. *Id.* Defendant argues that Plaintiff's claims under Title VI, Section 1981, and the Grove City Bill all fail because Plaintiff has not alleged facts giving rise to the inference that he was the victim of discrimination. *Id.* at 2–3. Finally, Defendant argues that Plaintiff's claims for false advertising or deceptive practices under Section 349 and 350 of the New York General Business Law should be dismissed for failure to allege consumer-facing fraud. *Id.*[5]

For the following reasons, Defendant is entitled to dismissal of all of Plaintiff's claims.[6]

---

[5] Defendant also argues that Plaintiff's claims for age discrimination fail for failure to comply with the administrative exhaustion requirements of the Age Discrimination Act, 42 U.S.C. § 6104(e)(1)-(2), and that his discrimination claims under New York state and New York City law should be dismissed because Plaintiff was not an employee or a covered non-employee entitled to bring such claims. *Id.* at 2–3. In his opposition to the motion to dismiss, Plaintiff concedes he has failed to exhaust administrative remedies, and that he was neither an employee nor a covered non-employee under the New York State Human Rights Law or the New York City Human Rights Law. Dkt. No. 59 at 27. Accordingly, those claims are dismissed.
[6] Defendant argues that the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims in the event that the Court dismisses Plaintiff's federal law claims. Dkt. No. 48 at 34. But Plaintiff invoked diversity jurisdiction, 28 U.S.C. § 1332(a), when he commenced this action with his address listed as being in the United Kingdom, Dkt. No. 1 at 3. Although Defendant argues that Plaintiff has since initiated a more recent action with a New York address listed, Dkt. No. 48 at 34, diversity is determined at the time an action is commenced, *see Universal Licensing Corp. v. Paola del Lunco S.p.A.*, 293 F.3d 579, 581 (2d Cir. 2002). Further, the initial complaint plausibly stated an amount in controversy greater than $75,000, based on, for example, the prize money granted to winners of the Challenge. Dkt. No. 1-1 at ECF p. 12.

## I.       Plaintiff's Compliance with Federal Rule of Civil Procedure 8

Defendant argues that Plaintiff's Amended Complaint does not comply with the requirements of Federal Rule of Civil Procedure 8.  Dkt. No. 48 at 8.  In order to enable the opposing party to answer a complaint and adequately prepare for discovery and trial, the Federal Rules of Civil Procedure require that pleadings give "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Under the Federal Rules of Civil Procedure, the complaint must be both "short and plain." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).  "When a complaint fails to comply with these requirements, the district court has the power, on motion or *sua sponte*, to dismiss the complaint or to strike such parts as are redundant or immaterial." *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995).  Still, dismissal is "usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Salahuddin*, 861 F.2d at 42.

Defendant argues that Plaintiff violated the mandate of Federal Rule of Civil Procedure 8(a)(2) that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Additionally, Defendant argues that Plaintiff violated the dictate contained in Federal Rule of Civil Procedure 8(d)(1) that "[e]ach allegation must be simple, concise, and direct." Dkt. No. 48 at 8; Fed. R. Civ. P. 8(d)(1). Plaintiff responds that his complaint is not analogous to the complaints in the cases cited by Defendant in which courts have dismissed claims for violation of Federal Rule of Civil Procedure 8.  Dkt. No. 59 at 7.  Plaintiff also argues that because he is proceeding pro se, his complaint contains sufficient allegations to allow his claims to proceed.  *Id*. at 7–8.

Plaintiff's complaint, while lengthy, is not so unintelligible that its true substance cannot be discerned.  The Amended Complaint is sixty pages in length, with ninety-five pages of

exhibits attached.  Dkt. No. 37.  Although portions of the Amended Complaint may be difficult to follow, the events at issue and the legal claims emerging from them are identifiable. Sufficient information appears to allow Defendant to have filed its motion to dismiss, and for the Court to assess the merits of that motion.

The cases that Defendant cites in support of its argument are all distinguishable.  In *Benzo v. New York State Division of Human Rights*, 1997 WL 37961, at *1 (S.D.N.Y. Jan. 31, 1997), the court dismissed a complaint that was 444 pages accompanied by several separately bound appendices.  In *Morgens Waterfall Holdings LLC v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 198 F.R.D. 608, 210 (S.D.N.Y. 2001), the court dismissed a 103-page amended complaint filed by a party that was not proceeding pro se.  Plaintiff's Amended Complaint here, a sixty-page product prepared by Plaintiff himself, is categorically different than those in the cases on which Defendant relies.  The Court therefore declines to dismiss Plaintiff's complaint for failure to comply with Federal Rule of Civil Procedure 8.

## II.        Breach of Contract

Plaintiff alleges that Defendant breached an implied contract it had with him by selling him BS and MBA degrees "that included a lifetime of alumni benefits" but those "alumni benefits" have since been "withdrawn" from him by NYU.  Basis for Complaint ¶¶ 1–2. Plaintiff highlights a section of the NYU website touting "Alumni Benefits & Resources," which states that "alumni can explore entrepreneurship support."  Factual Allegations ¶ 10.  Plaintiff also points to a section of the Frequently Asked Questions website that states, "[i]s there a limit on how many startup advising appointments I can make?  [A:]  No.  You can make as many appointments as you need, and in the different areas you may need assistance in."  *Id.* ¶ 68.  The NYU website states that "[a]ny person who has earned at least 13 credits in a matriculated (degree seeking) program at the University is considered part of the NYU alumni community."

*Id.* ¶ 11.  Plaintiff claims that these statements created an implied contract between him and Defendant, which Defendant violated when it revoked his access to start-up advising sessions in November 2021.  *Id.* ¶ 37.  Plaintiff also alleges that Defendant violated contracts that it had with him in its operation of the Hackathon and the Challenge.  Basis for Complaint ¶¶ 4–5.

Defendant responds that none of Plaintiff's undergraduate degree, graduate degree, or Defendant's employee handbook create an implied contractual relationship between Plaintiff and Defendant.  Dkt. No. 48 at 10–11.  According to Defendant, any contractual relationship that it had with Plaintiff ended upon Plaintiff's graduation.  *Id.* at 10.  Additionally, Defendant argues that general statements regarding alumni benefits are insufficient to create binding legal obligations.  *Id.*  Defendant also argues that, even if there was a contractual relationship between the parties, Plaintiff alleges no facts comprising a breach of such contract.  *Id.*

A contract is "a promise or a set of promises for the breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty."  *Lauture v. Int'l Bus. Machines Corp.*, 216 F.3d 258, 261 (2d Cir. 2000) (quoting Restatement (Second) Contracts § 1 (1979)).  To establish an enforceable contract under New York law, there must be "an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound."  *I.C. ex rel. Solovsky v. Delta Galil USA*, 135 F. Supp. 3d 196, 208 (S.D.N.Y. 2015) (quoting *Kowalchuk v. Stroup*, 873 N.Y.S.2d 43, 46 (1st Dep't 2009)); *see also Mizuna, Ltd. v. Crossland Fed. Sav. Bank*, 90 F.3d 650, 658 (2d Cir. 1996) ("A valid contract requires a manifestation of mutual assent to a bargained-for exchange.").  Mutual assent is manifested in "a meeting of the minds."  *See Specht v. Netscape Commc'ns Corp.*, 150 F. Supp. 2d 585, 587 (S.D.N.Y. 2001), *aff'd*, 306 F.3d 17 (2d Cir. 2002) ("Promises become binding when there is a meeting of the minds and consideration is exchanged."); *Kelly Asphalt Block Co. v. Barber Asphalt Paving Co.*, 105 N.E.

88, 89 (N.Y. 1914) ("A contract involves a meeting of the minds of the contracting parties.").

For consideration to be valid, it must be "bargained for," meaning that the promisor must seek it

in exchange for his promise, and the promisee must give it in exchange for that promise.  *See*

*Ferguson v. Lion Holdings, Inc.*, 312 F. Supp. 2d 484, 494 (S.D.N.Y. 2004) ("Consideration is

simply a bargained-for exchange of promises or performance."); *Startech, Inc. v. VSA Arts*,

126 F. Supp. 2d 234, 236 (S.D.N.Y. 2000) ("Consideration is defined as either a bargained for

gain or advantage to the promisee or a bargained for legal detriment or disadvantage to the

promisor."); *Von Bing v. Mangione*, 766 N.Y.S.2d 131, 133 (3d Dep't 2003) (same);

Restatement (Second) Contracts § 71 (same). Although "the adequacy of consideration is not a

proper subject for judicial scrutiny," consideration is only effective if "something of 'real value

in the eye of the law' was exchanged."  *Apfel v. Prudential-Bache Sec. Inc.*, 616 N.E.2d 1095,

1097 (N.Y. 1993) (citation omitted).  In a case for breach of contract, "when it is clear from the

face of the pleading and the terms of the contract that a promise is gratuitous, the complaint will

be dismissed."  *Startech, Inc.*, 126 F. Supp. 2d at 236.

An implied contract "may result as an inference from the facts and circumstances of the

case, although not formally stated in words, and is derived from the "presumed" intention of the

parties as indicated by their conduct."  *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 506–07 (2d Cir.

2009) (quoting *Jemzura v. Jemzura*, 330 N.E.2d 414, 420 (N.Y. 1975)).  "A contract implied in

fact is as binding as one that is express, and similarly 'requires such elements as consideration,

mutual assent, legal capacity and legal subject matter.'"  *Id.* at 507 (quoting *Maas v. Cornell

Univ.*, 721 N.E.2d 966, 970 (N.Y. 1999)).

In order to state a breach of contract claim under New York law, Plaintiff must allege:

"(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff,

(3) breach of contract by the defendant, and (4) damages." *See Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004). "A sufficient pleading for breach of contract must 'at a minimum, allege the terms of the contract, each element of the alleged breach and the resultant damages in a plain and simple fashion.'" *Warren v. John Wiley & Sons, Inc.*, 952 F. Supp. 2d 610, 624 (S.D.N.Y. 2013) (quoting *Zaro Licensing, Inc. v. Cinmar, Inc.*, 779 F. Supp. 276, 286 (S.D.N.Y. 1991)); *see Caro Cap., LLC v. Koch*, 2021 WL 1595843, at *6 (S.D.N.Y. Apr. 23, 2021), *on reconsideration*, 2021 WL 2075481 (S.D.N.Y. May 24, 2021) (same). "New York courts require plaintiffs to 'plead the provisions of the contract upon which the claim is based'—in other words, 'a complaint in a breach of contract action must set forth the terms of the agreement upon which liability is predicated.'" *Anders v. Verizon Commuc'ns*, 2018 WL 2727883, at *8 (S.D.N.Y. June 5, 2018) (quoting *Window Headquarters, Inc. v. MAI Basic Four, Inc.*, 1993 WL 312899, at *3 (S.D.N.Y. Aug. 12, 1993)). "It is well settled that for a contract to be valid, the agreement between the parties must be definite and explicit so their intention may be ascertained to a reasonable degree of certainty. Even if the parties believe that they are bound, if the terms of the agreement are so vague and indefinite that there is no basis or standard for deciding whether the agreement had been kept or broken, or to fashion a remedy, and no means by which such terms may be made certain, then there is no enforceable contract." *Foros Advisors LLC v. Digital Globe, Inc.*, 333 F. Supp. 3d 354, 360 (S.D.N.Y. 2018) (quoting *Candid Prods., Inc. v. Int'l Skating Union*, 530 F. Supp. 1330, 1333 (S.D.N.Y. 1982)). "Thus, to plead a claim for breach of contract . . ., plaintiff 'must provide specific allegations as to an agreement between the parties, the terms of that agreement, and what provisions of the agreement were breached as a result of the acts at issue.'"

*Nuevos Aires Shows LLC v. Bühler*, 2020 WL 1903995, at *4 (S.D.N.Y. Apr. 17, 2020) (quoting *Valentini v. Citigroup, Inc.*, 837 F. Supp. 2d 304, 327 (S.D.N.Y. 2011)).

Construing the allegations of the pro se complaint liberally, Plaintiff can be understood to make two separate claims: (1) NYU promised him alumni benefits including entrepreneurship support and breached those promises, Basis for Complaint ¶¶ 1–2; and (2) Defendant assumed contractual obligations when Plaintiff entered the Hackathon and the Challenge and breached those obligations by failing to treat him fairly and to give him an award, *id.* ¶¶ 4–5. Each formulation fails, albeit for different reasons. The Court discusses each in turn.

### A.      Alumni Entrepreneurship Support in Exchange for Enrollment

Plaintiff alleges that NYU breached promises it made to him of alumni support. He highlights portions of the NYU website touting "Alumni Benefits & Resources," which states that "alumni can explore entrepreneurship support," Factual Allegations ¶ 10, and states that any person who has earned at least thirteen credits "is considered part of the NYU alumni community" and is "eligible" for alumni benefits, *id.* ¶ 11. The Berkley Center, which is run by the NYU Stern School of Business, states on its website that it is "a venture design studio for bold thinkers, innovative doers, and entrepreneurial leaders," is part of the business school's alumni benefits offering, and offers start-up advising sessions with in-house industry experts available to "alum solo founders." *Id.* ¶¶ 14, 18. A video on NYU's website states that the Berkley Center has "all sorts of help desks" that are "open to anyone from NYU," including to an alum solo founder. *Id.* ¶ 18. The Berkley Center Frequently Asked Questions page states, in part: "[i]s there a limit on how many startup advising appointments I can make? [A:] No. You can make as many appointments as you need, and in the different areas you may need assistance in." *Id.* ¶ 68. Plaintiff alleges that those promises were violated. The claim fails for at least three independent reasons.

First, Plaintiff has not alleged consideration.  He alleges in portions of the Amended Complaint that he provided consideration to NYU for the alumni benefits in the form of tuition payments.  *See* Basis for Complaint ¶ 2 ("NYU broke an implied contract with Annabi by selling him an MBA degree that included a lifetime of alumni benefits but has withdrawn alumni benefits from Annabi with no valid reason while these benefits remain available to other alumni."); Dkt. No. 37 at ECF p. 10 ("NYU . . . twice sold [Annabi] an expensive lifetime bus pass (NYU tuition for education and services).").  But the factual allegations of his Amended Complaint do not support that claim.  Plaintiff graduated from New York University with a BS degree in 2003, and with an MBA in 2010.  Factual Allegations ¶ 20.  He would have paid tuition then; there is no contrary allegation.  The website promotions and statements to which he points were all made in the 2020 to 2021 time period.  He could not have made the decision to enroll in exchange for those promises.  Any obligation he had to pay tuition and any tuition he paid pre-existed Defendant's alleged promises.  "It is axiomatic that past consideration cannot support the formation of a new contract."  *Pennolino v. Cent. Prods. LLC*, 2023 WL 3383034, at *15 (S.D.N.Y. May 11, 2023); *see also Busrel Inc. v. Dotton*, 2021 WL 2980494, at *9 (W.D.N.Y. July 15, 2021) (holding that an agreement was unenforceable due to lack of consideration where the offer consisted of a promise to carry out a preexisting contractual obligation); *U.S. ex rel. Excavation Concrete v. A.C.S. Systems Associates, Inc.*, 2001 WL 1916444, at *5 (S.D.N.Y. Apr. 6, 2001); *James A. Haggerty Lumber & Mill Work, Inc. v. Thompson Starrett*, 256 N.Y.S.2d 1011, 1012–13 (1st Dep't 1965) (holding that an agreement to renegotiate prices that the parties had previously agreed upon did not constitute a binding contract because it lacked consideration).

16

In the absence of any consideration, Defendant's offer of alumni support can only be understood as gratuitous.  Plaintiff did not provide any benefit to Defendant in exchange for the offer of alumni support.  Nor did he incur any detriment in exchange for those offers.  Defendant volunteered alumni support to Plaintiff; it was free to withdraw that support at any time.  It might incur reputational injury for having done so, but it had no contractual obligation to continue to provide those services.  *See Roth v. Isomed, Inc.*, 746 F. Supp. 316, 319 (S.D.N.Y. 1990) ("[C]onsideration is a necessary ingredient for an enforceable contract."); *see also Highlands Ins. Co. v. PRG Brokerage, Inc.*, 2004 WL 35439, at *8 (S.D.N.Y. Jan. 6, 2004) (dismissing breach of contract claim upon finding that a contract did not exist because a letter containing a mutual promise not to act did not evince a burden or detriment and therefore lacked consideration); *Leibowitz v. Elsevier Science Ltd.*, 927 F. Supp. 688, 703 (S.D.N.Y. 1996) (granting summary judgment for defendant on breach of contract claim after holding no binding contract existed because no consideration was provided in exchange for the defendant's alleged promise).

Second, Plaintiff's breach of contract claims also fails because he does not allege an agreement on all material terms, with definiteness, that Defendant breached.  *See 166 Mamaroneck Ave. Corp. v. 151 E. Post Rd. Corp.*, 575 N.E. 2d 104, 105 ("If an agreement is not reasonably certain in its material terms, there can be no legally enforceable contract." (internal quotation marks and citations omitted)).  Plaintiff relies on statements that he would be "eligible" for alumni benefits, that start-up sessions were available to "alum solo founders," and that he could make appointments for advice.  But those statements are so general as to be unenforceable; they do not indicate what kinds of benefits would be available, for how long NYU was obligated to provide benefits, and whether NYU was obligated on demand to make itself available for any session that any alumnus or alumni might request.  *See Cheves v. Trs. of Columbia Univ.*, 931

N.Y.S.2d 877, 877 (1st Dep't 2011) (holding that statements in an "Alumni Relations brochure" which "list[ed] certain benefits and services generally available to alumni," did not create a binding contract that the defendant breached); *see also Keefe v. New York Law School*, 897 N.Y.S.2d 94, 95 (1st Dep't N.Y. 2010) ("[O]nly specific promises set forth in a school's bulletins, circulars, and handbooks, which are material to the student's relationship with the school, can establish the existence of an implied contract."). They thus do not give rise to contractual obligations for that additional reason.

Finally, even if an agreement did exist, Plaintiff does not allege a violation of the promise by Defendant. He claims that NYU denied him support. But the only factual allegation that he makes to support that claim is that after he had had "8 appointments over the past several weeks with [NYU's] startup experts," NYU denied him a further appointments and stated that it "must cap access to this very limited resource." Dkt. No. 37-1 at 51. That conduct cannot be understood as a breach of contract. Plaintiff explored entrepreneurship support by entering into two contests, Factual Allegations ¶¶ 31, 41, and attending advising sessions with faculty, *id.* ¶¶ 16, 30. NYU's offer that alumni could make as many appointments as they needed cannot be reasonably understood to imply an obligation on the part of NYU to hold those sessions at the times requested or to eliminate its ability to temporarily limit Plaintiff's access so that others would also have the opportunity to receive advice. Plaintiff has alleged no more than that.

**B.      The Hackathon and the Challenge**

Plaintiff next argues that Defendant breached contracts that it had with Plaintiff with regard to its execution of the Hackathon and the Challenge. With regard to the Hackathon, Plaintiff alleges that Defendant violated a contract between the parties because Plaintiff submitted an entry to the Hackathon, Factual Allegations ¶ 31, but Defendant ultimately chose not to select Plaintiff for participation, *id.* ¶ 36, even though Plaintiff claims that his entry met all

of the requirements for eligibility, *id.* ¶ 31, and even though Plaintiff claims that his entry was stronger than competitors' applications that were selected, *id.* ¶ 34.  With regard to the Challenge, Plaintiff alleges that Defendant violated a contract between the parties because: (1) Plaintiff paid the requisite $100 fee and submitted an entry into the Challenge, *id.* ¶ 41, (2) Defendant advertised that it would select between twenty-five and thirty-five award winners, Dkt. No. 37-1 at 34, and (3) Defendant declined to select Plaintiff as a winner and ultimately selected only twenty-two winners, Factual Allegations ¶¶ 71, 74.  Plaintiff also alleges that Defendant breached a contract with regard to the Challenge because Plaintiff's submission was more competitive than several other submissions selected as winners.  *Id.* ¶ 58.  Additionally, Plaintiff alleges that Defendant selected winners for both contests in an arbitrary manner inconsistent with the stated purposes of the contests.  *Id.* ¶¶ 38, 60.

The rules of a contest can give rise to contractual obligations under New York law.  *See Sargent v. New York Daily News, L.P.*, 840 N.Y.S.2d 101, 103 (2d Dep't 2007) ("[T]he rules of a contest constitute a contract offer and . . . the participant's [entry into] the contest 'constitute[s] an acceptance of that offer, including all of its terms and conditions.'" (citations omitted)); *see also Robertson v. United States*, 343 U.S. 711, 713 (1952) (holding that contestant's acceptance of the contest sponsor's offer to compete in a symphonic works contest created an enforceable contract); *Moreno v. Marbil Productions, Inc.*, 296 F.2d 543, 544 (2d Cir. 1961) ("By submitting a postal card entry containing his estimate of the price of the merchandise displayed in each contest, plaintiff accepted the offer and a unilateral contract was created which bound defendants to deliver the prize to the winner.").  A solicitation to participate in a contest, whether one of skill or of chance, constitutes an offer, and the submission of an entry constitutes acceptance of the offer.  *Diop v. Daily News, L.P.*, 2006 WL 1041064, at *3 (N.Y. Sup. Ct. 2006) ("It is

hornbook law that the rules of a contest constitute a contract offer and that the participant's [entry into] the contest 'constitute[s] an acceptance of that offer, including all of its terms and conditions.'") (quoting *Fujishima v. Games Mgt. Servs.*, 110 Misc 2d 970, 976, 443 N.Y.S.2d 323 (N.Y. Sup. Ct. 1981))).  Under those circumstances, the contest's rules, and the participant's entry into the contest, "create[e] a binding contract."  *African Diaspora Mar. Corp. v. Golden Gate Yacht Club*, 968 N.Y.S.2d 459, 464 (1st Dep't 2013).

For those reasons, Defendant's broad argument that Plaintiff's participation in the Hackathon and the Challenge do not give rise to contractual obligations on its part must fail. Taking Plaintiff's allegations as true, Defendant offered Plaintiff certain benefits if he participated in the Hackathon and the Challenge, in the form of an opportunity to receive an award, and Plaintiff accepted that offer by submitting an application and paying the entry fee. All of the elements of offer, acceptance, and meeting of the minds thus appear to have been met. As currently pleaded, however, Plaintiff fails to allege a claim for breach of contract for a different reason, also identified by Defendant—even if Defendant owed contractual obligations to Plaintiff, Plaintiff has failed to plead that Defendant breached those obligations.  Dkt. No. 48 at 12.  That argument is well-founded.

As previously stated, in order to plead a claim for breach of contract, a party must plead the specific provisions of a contract that the Defendant has violated.  *See Anders*, 2018 WL 2727883, at *8 ("New York courts require plaintiffs to 'plead the provisions of the contract upon which the claim is based'—in other words, 'a complaint in a breach of contract action must set forth the terms of the agreement upon which liability is predicated.'" (quoting *Window Headquarters, Inc*, 1993 WL 312899, at *3)); *see also Pennolino*, 2023 WL 3383034, at * 13; *Levy v. Bessemer Trust Co., N.A.*, 1997 WL 413079, at *5 (S.D.N.Y. July 30, 1997).

"'Conclusory allegations that a contract existed or that it was breached do not suffice.'" *Lamda Sols. Corp. v. HSBC Bank USA, N.A.*, 574 F. Supp. 3d 205, 213 (S.D.N.Y. 2021) (quoting *Emerald Town Car of Pearl River, LLC v. Philadelphia Indmn. Ins. Co.*, 2017 WL 1383773, at *7 (S.D.N.Y. Apr. 12, 2017)).  However, that appears to be what Plaintiff has pled.  He alleges that he entered the Hackathon and the Challenge and that he failed to receive an award and thereby was injured, Basis for Complaint ¶¶ 4–5, but he fails to allege any provision of a contract that gave him the right to an award or that Defendant violated.  Plaintiff's allegation that his non-selection evinces a breach of contract does not suffice as a statement of specific provisions of the agreement that were breached as a result of the acts at issue.  *See Valentini*, 837 F. Supp. 2d at 328 ("Defendants argue that Plaintiffs' breach of contract claim must be dismissed because Plaintiffs fail to identify what specific provisions of the contract they claim Defendants breached.  We agree.").  He therefore fails to state a claim for breach of contract or breach of implied contract with respect to either contest.

Plaintiff's allegation that Defendant stated on its website that between twenty-five and thirty-five winners would be selected for the Challenge is not alone enough to make out a claim for breach of contract.  Dkt. No. 37-1 at 34.  It is clear from the complaint that the website statement itself was not an offer that Plaintiff accepted by submitting his application and paying the entry fee.  For one, the website does not mention any requirement that an entry fee be paid or that an application be submitted.  It simply states a series of features of the Challenge, without stating any rules of the contest.  For another, it also is clear from Plaintiff's allegations that the Challenge was "a skilled contest."  Basis for Complaint ¶ 5.  The Challenge has "selection criteria," including that the venture have "strong connections to NYU."  Factual Allegations ¶ 21.  The aims of the Challenge are to "support and provide guidance to all the students,

alumni[,] faculty and researchers who really want to create something new in the world of business" and to "identify and reward those ventures being developed inside of the university and inside of the NYU community with the greatest potential to not only become [a] viable business, but more importantly disruptive ones." *Id.* It was not just a lottery or a sweepstakes in which the only criterion would have been to submit an application (regardless of its contents) and to pay an entry fee in exchange for an equal opportunity for a prize. It matters what the contents of the application were. For that reason, the statement on the website cannot have constituted the offer which Plaintiff accepted by paying the entry fee. And, in the absence of any allegations of what the offer was and thereby what Defendant promises in exchange for Plaintiff's entry fee, Plaintiff cannot plead a claim for breach of an express or implied contract.

Plaintiff therefore fails to state a claim for breach of contract with regard to the Challenge.[7]

### III. Breach of Fiduciary Duty, Breach of Implied Covenant of Good Faith and Fair Dealing, Common-Law and Constructive Fraud, Promissory Estoppel, Unjust Enrichment, Constructive or Fiduciary Trust, and Negligent Misrepresentation

Plaintiff brings claims for breach of fiduciary duty, breach of implied covenants and good faith and fair dealing, common law and constructive fraud, promissory estoppel, unjust enrichment, constructive or fiduciary trust, and negligent misrepresentation. Basis for Complaint ¶¶ 3, 6, 7. Plaintiff's allegations arise out of the same conduct underlying his breach of contract claims, centering on Defendant's limiting Plaintiff's access to entrepreneurship resources and declining to select Plaintiff as a winner of the Hackathon or the Challenge. *Id.*

---

[7] Plaintiff also alleges that Defendant wrongfully failed to include in the Challenge requisite terms and conditions, Factual Allegations ¶ 41, and that Defendant changed the terms of the Challenge after he had applied, *id.* ¶ 42. However, he does not allege that such changes breached any contract with him or caused him injury.

A.      **Plaintiff's Quasi-Contract Claims**

1.      **Impermissible Duplication**

Two of the claims brought by Plaintiff sound in quasi-contract: promissory estoppel  and

unjust enrichment.  *See Frio Energy Partners, LLC v. Fin. Tech. Leverage, LLC*, 2023 WL

4211035, at *7, 12 (S.D.N.Y. June 27, 2023); *Shetel Indus. LLC v. Adin Dental Implant Sys.,

Inc.*, 493 F. Supp. 3d 64, 112 (E.D.N.Y. 2020) (promissory estoppel is quasi-contractual);

*Goldman v. Metropolitan Life Ins. Co.*, 841 N.E.2d 742, 746 (N.Y. 2005) ("The theory of unjust

enrichment lies as a quasi-contract claim.  It is an obligation the law creates in the absence of an

agreement." (citation omitted)).

Defendant argues that each of these claims are duplicative of Plaintiff's breach of

contract claims and therefore cannot be brought separately.  Dkt. No. 48 at 12–13.  "[Q]uasi-

contractual claims are generally precluded where valid, enforceable contracts governing the

particular subject matter of the case exist between the parties . . . ."  *Shetel Indus. LLC*, 493 F.

Supp. 3d at 113 (citing *Beth Isr. Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*,

448 F.3d 573, 587 (2d Cir. 2006)); *see Valley Juice Ltd., Inc. v. Evian Waters of France, Inc.*,

87 F.3d 604, 610 (2d Cir. 1996) (holding that the existence of an enforceable contract governing

a particular subject matter "ordinarily precludes recovery in quasi contract for events arising out

of the same subject matter"); *A. Montilli Plumbing & Heating Corp. v. Valentino*, 935 N.Y.S.2d

647, 648 (2d Dep't 2011) ("The existence of an express agreement, whether oral or written,

governing a particular subject matter precludes recovery in quasi-contract for events arising out

of the same subject matter.").  "[W]here there is a contract that expressly outlines the parties'

own definition of their respective obligations, then courts are loath, due to considerations of

'both justice and efficiency,' to override those obligations in favor of 'obligations that the law

would impose in the absence of agreement.'" *Frio Energy Partners*, 2023 WL 4211035, at *10

(quoting Restatement (Third) of Restitution and Unjust Enrichment § 2).

A claim in quasi-contract, such as unjust enrichment or promissory estoppel, will lie even

in the presence of a contract either where (1) the contract does not cover the dispute in issue, *id.*

at *8; *see Poplar Lane Farm LLC v. Fathers of Our Lady of Mercy*, 449 F. App'x 57, 59 (2d Cir.

2011); or (2) "a bona fide dispute exists as to the existence of the contract," in which case "a

plaintiff may proceed on both breach of contract and quasi-contract theories" in the alternative,

*Shetel Indus. LLC*, 2020 WL 5820599, at *35 (quoting *Nakamura v. Fujii*, 677 N.Y.S.2d 113,

116 (1st Dep't 1998)); *see Labajo v. Best Buy Stores, L.P.*, 478 F. Supp. 2d 523, 531 (S.D.N.Y.

2007) ("When there is a bona fide dispute as to the existence of a contract . . . assertion of a

breach of contract claim does not preclude [plaintiff] from pleading an unjust enrichment claim

in the alternative.").  In addition, "[w]here a plaintiff also alleges breach of a contract, a

promissory estoppel claim is duplicative of a breach of contract claim unless the plaintiff alleges

that the defendant had a duty independent from any arising out of the contract." *Underdog

Trucking, LLC, Reggie Anders v. Verizon Servs. Corp.*, 2010 WL 2900048, at *6 (S.D.N.Y.

July 20, 2010).

Plaintiff's quasi-contract claims with respect to the Hackathon and the Challenge are

impermissibly duplicative.  Although Plaintiff does not attach the rules of the Hackathon and the

Challenge to the Amended Complaint, he alleges that they exist. *E.g.*, Factual Allegations ¶ 41.

He alleges an offer in the form of the invitation to participate in each contest, an acceptance in

the form of his applications, and a meeting of the minds.  He cannot through artful pleading

allege in quasi-contract what his allegations make clear is in contract.  *See Poplar Lane Farm

LLC*, 449 F. App'x at 59 ("Under New York law, when a valid agreement governs the subject

24

matter of a dispute between parties, claims arising from that dispute are contractual; attempts to repackage them as sounding in fraud, conversion, and other torts, as well as unjust enrichment, implied and quasi contract, and quantum meruit, are generally precluded, unless based on a duty independent of the contract.").  Moreover, Defendant does not dispute that the rules of  the Hackathon and the Challenge establish a contract, although they argue it was not violated.  The same, however, cannot be said with respect to the promises regarding alumni entrepreneurship support, where Defendant does dispute that a contract was formed and the Court has concluded that Plaintiff does not adequately allege the existence of a contract.  In any event, each of Plaintiff's quasi-contract claims fails on the merits.

### 2.      Promissory Estoppel

"Promissory estoppel requires a plaintiff to prove three elements: (1) a clear and unambiguous promise, (2) reasonable and foreseeable reliance by the promisee, and (3) unconscionable injury to the relying party as a result of the reliance."  *Aleem v. Experience Hendrix, L.L.C.*, 413 F. Supp. 3d 251, 259 (S.D.N.Y. 2019) (internal quotation marks and citation omitted); *see Kaye v. Grossman*, 202 F.3d 611, 615 (2d Cir. 2000); *Readco, Inc. v. Marine Midland Bank*, 81 F.3d 295, 301 (2d Cir. 1996).  "[P]romissory estoppel differs from quantum meruit and unjust enrichment in that it turns not on the nature of the benefit received by the defendant but upon the clarity and definitiveness of its promise and change in the plaintiff's position as a result of that promise."  *Frio Energy Partners, LLC*, 2023 WL 4211035, at *12.  "A promise that is too vague or too indefinite is not actionable under a theory of promissory estoppel."  *Kilgore v. Ocwen Loan Serv., LLC*, 89 F. Supp. 3d 526, 534 (E.D.N.Y. 2015) (quoting *Bd. of Trs. ex rel. Gen. Ret. Sys. of Detroit v. BNY Mellon, N.A.*, 2012 WL 3930112, at *6 (S.D.N.Y. Sept. 10, 2012)).

Plaintiff alleges neither a clear and unambiguous promise with respect to alumni support or a change in position as a result of that promise. The statements to which Plaintiff points—that "alumni can explore entrepreneurship support," Factual Allegations ¶ 10, that start-up sessions are available, *id.* ¶¶ 14, 18, and that there are no limits to the number of appointments that can be made, *id.* ¶ 68—are all general and indefinite. The first statement makes no promises with respect to the nature of entrepreneurship support that can be explored, while the second two cannot be understood to promise that a session will be available on demand. The very nature of an appointment is that it is something that must be made in advance, at a time that works for both parties.[8] Neither statement specifies precisely how many advising appointments would be available, during what times of day the appointments would be available, how Defendant would make the appointments available to alumni, or other clear terms that could comprise a promise. *See Bd. of Trs. ex rel. Gen. Ret. Sys. of Detroit*, 2012 WL 3930112, at *6 (dismissing plaintiff's promissory estoppel claim because plaintiff failed to allege that marketing materials contained a clear and unambiguous promise); *Richbell Info Servs. Inc. v. Jupiter Partners, LP*, 765 N.Y.S.2d 575, 588 (N.Y. App. Div. 2003) (affirming dismissal of a promissory estoppel claim because "[t]he alleged promise, . . . was too indefinite to be the type of clear and unambiguous promise required for promissory estoppel").

More importantly, Plaintiff does not allege that he took any action to his detriment based on Defendant's alleged promises with respect to alumni support. As noted above, he did not enroll or pay tuition based on the promises. The alleged promises were made long after he enrolled, paid his tuition, and had graduated. He also does not allege that he invested in Activate

---

[8] Plaintiff also alleges that NYU promised him that help desks would be open to him, Factual Allegations ¶ 18, but he does not allege that Defendant violated that promise.

based on the promise that if he did so he would receive alumni support.  From what appears in the Amended Complaint, he founded Activate from his interest in entrepreneurship and his zeal to promote social justice.  Factual Allegations ¶¶ 24–26.  He does not allege any other action he took in reliance on Defendant's alleged promises.  He thus cannot plead a claim of promissory estoppel with respect to those promises.

Plaintiff does allege action that he took with respect to the Hackathon and the Challenge.  With regard to the Hackathon, construing Plaintiff's allegations liberally, he prepared and submitted the application on the understanding that Defendant would select entries in accordance with certain criteria, which promise Defendant allegedly violated because it declined to select his submission despite his entry more readily satisfying the selection criteria provided by Defendant.  *Id.* ¶¶ 32, 34, 38, 39.  As to the Challenge, construing Plaintiff's allegations liberally, he prepared the application and paid the entry fee on the understanding that Defendant would give 25–35 awards, which promise Defendant violated when it gave only twenty-two awards, and that again, his submission met the stated competition criteria more directly than other entries.  He does not allege that Defendant capped the number of awards but simply that Defendant only found twenty-two applications worthy of an award.  *Id.* ¶ 72.

Those allegations, taken as true, fail to show reasonable and foreseeable reliance or that he suffered unconscionable injury.  As noted above, from Plaintiff's own allegations, the Hackathon and the Challenge were contests of skill and not of chance.  Applications would be judged on their merits and not simply given an award by virtue of having decided to participate.  In those circumstances, it would not be reasonable for Plaintiff to prepare an application and to pay an entry fee on the notion that if he paid, he would have a chance to win simply on the numbers and regardless of the contents of his application.  Nor would it have been foreseeable to

Defendant that Plaintiff would pay the entry fee on the basis of any such mistaken assumption. Plaintiff could only have understood—as he elsewhere alleges, *see id.* ¶¶ 58, 59, 74,—that his application would be judged on the merits and be given an award if it was warranted on the merits. But Plaintiff alleges no clear and unambiguous promise with respect to how the application would be judged on the merits that could give rise to a claim in promissory estoppel.

### 3. Unjust Enrichment

In order to state a claim for unjust enrichment under New York law, a party must allege that: "(1) the other party was enriched; (2) at that party's expense; and (3) that 'it is against equity and good conscience to permit [the other party] to retain what is sought to be recovered.'" *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1110 (N.Y. 2011) (quoting *Citibank, N.A. v. Walker*, 787 N.Y.S.2d 48, 48 (2d Dep't 2004)). "[T]he theory of unjust enrichment lies as a quasi-contract claim and contemplates an obligation imposed by equity to prevent injustice, in the absence of an actual agreement between the parties." *Georgia Malone & Co. v. Rieder*, 973 N.E.2d 743, 746 (N.Y. 2012). "Unjust enrichment claims are available 'only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff,' such as when 'the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled.'" *In re Columbia Tuition Refund Action*, 2021 WL 790638, at *9 (S.D.N.Y. Feb. 26, 2021) (quoting *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012)).

Plaintiff fails to state a claim for unjust enrichment regarding the alumni entrepreneurship advising sessions. Plaintiff has not demonstrated that Defendant was enriched by Plaintiff in a manner that would give rise to an equitable obligation running from Defendant to Plaintiff that has not been fulfilled. Plaintiff paid tuition earlier, and Defendant received no other benefit from

Plaintiff.  Dkt. No. 17 ¶ 20.  Defendant has extended numerous resources to Plaintiff, an alumnus who graduated with a BS more than fifteen years and an MBA more than ten years before Defendant revoked his access to entrepreneurship advising sessions.  *Id*.  Defendant continued to avail himself of entrepreneurial support resources, including the opportunity to enter start-up competitions against current students.  *Id*. ¶¶ 31, 41.  There is no allegation that Defendant received anything whatsoever in value from Plaintiff that it is obligated in good conscience to return.

Plaintiff also fails to state a claim for unjust enrichment regarding the Hackathon and the Challenge.  Plaintiff does not allege that he paid an entry fee for the Hackathon, or provided any other item of value that could give rise to a finding that Defendant was unjustly enriched.  Basis for Complaint ¶ 5 (describing the Hackathon as a "skilled contest with non-monetary consideration").  He alleges that he submitted PowerPoint slides and answers to required questions.  Factual Allegations ¶ 31.  However, there is no allegation that the PowerPoint or the responses to the questions enriched Defendant in any way.  Defendant rejected his application.  Defendant regarded Plaintiff's application as lacking in value.  *Id*. ¶ 36.  There thus was no enrichment giving rise to a claim for unjust enrichment.  *See Kaye*, 202 F.3d at 616 (reversing a verdict in favor of plaintiff for unjust enrichment because plaintiff "proffered insufficient evidence to support a finding that [defendant] actually benefitted"); *Dolmetta v. Uintah Nat. Corp.*, 712 F.2d 15, 20 (2d Cir. 1983) (upholding dismissal of unjust enrichment claim where plaintiff failed to allege that defendant was enriched).  With respect to the Challenge, Plaintiff alleges that Defendant received the $100 entry fee that Plaintiff paid with his submission.  *Id*. ¶ 41.  However, Plaintiff does not allege that Defendant was unjustly enriched by that fee.  From the allegations, Defendant performed the services it stated that it would perform—it evaluated

Plaintiff's submission and provided Plaintiff feedback about his entry as well as specific suggestions for next steps in an effort to support Plaintiff's entrepreneurial efforts.  Dkt. No. 37 ¶¶ 84, 91-92; Dkt. No. 37-1 at 63–64.  Plaintiff may not have been satisfied with that response, but his dissatisfaction does not give rise to a right in unjust enrichment to the return of the fee. *See, e.g.*, *Indyk v. Habib Bank Ltd.*, 694 F.2d 54, 58 (2d Cir. 1982) (finding no unjust enrichment where, even if defendant could be found to have been enriched, such enrichment was not "unjust").

      **B.**     **Breach of Fiduciary Duty, Breach of Implied Covenant of Good Faith and Fair Dealing, and Common Law and Constructive Fraud**

         **1.**     **Breach of Fiduciary Duty**

      Plaintiff also brings a claim for breach of fiduciary duty.  Basis for Complaint ¶ 7. "Under New York law, a breach of contract will not give rise to a tort claim unless a legal duty independent of the contract itself has been violated."  *Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 58 (2d Cir. 2012) (citing *Clark-Fitzpatrick v. Long Island R.R. Co.*, 516 N.E.2d 190 (N.Y. 1987)).  The independent "legal duty must spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent on the contract."  *Clark-Fitzpatrick*, 516 N.E.2d at 194.  "Where an independent tort duty is present, a plaintiff may maintain both tort and contract claims arising out of the same allegedly wrongful conduct."  *Bayerische Landesbank, N.Y. Branch*, 692 F.3d at 58 (citing *Hargrave v. Oki Nursery, Inc.*, 636 F.2d 897, 898–99 (2d Cir. 1980)).  If, however, "the basis of a party's claim is a breach of solely contractual obligations, such that the plaintiff is merely seeking to obtain the benefit of the contractual bargain through an action in tort, the claim is precluded as duplicative."  *Id.* (citing *N.Y. Univ. v. Cont'l Ins. Co.*, 662 N.E.2d 763, 770 (N.Y. 1995)).

Here, Plaintiff does not allege distinct facts that would create an independent duty that could give rise to separate cause of action for breach of fiduciary duty.  Courts in this circuit have held that institutes of higher education generally do not owe fiduciary duties to their students, let alone their alumni.  *See Radin v. Albert Einstein College of Med. of Yeshiva Univ.*, 2005 WL 1214281, at *14 (S.D.N.Y. May 20, 2005) (holding that a university did not owe a fiduciary duty to a student plaintiff); *Moy v. Adelphi Institute, Inc.*, 866 F. Supp. 696, 708 (E.D.N.Y. 1994) (same with regard to a vocational school).  A fortiori, after a student has graduated and moved on, there can be no continuing fiduciary duty.  At that point, the university owes no duties to its former student.  Plaintiff therefore does not allege facts to establish an independent fiduciary duty owed to him by Defendant, and his claim for breach of fiduciary duty must therefore be dismissed.  *See Am. Lecithin Co. v. Rebmann*, 2017 WL 4402535, at *21 (S.D.N.Y. Sept. 30, 2017) (dismissing breach of fiduciary duty claim as duplicative of breach of contract claim where plaintiff did not plead independent basis for fiduciary duty); *Commerzbank AG v. Bank of N.Y. Mellon*, 2017 WL 1157278, at *5 (S.D.N.Y. Mar. 21, 2017) (same); *82 Retail LLC v. Eighty Two Condominium*, 986 N.Y.S.2d 106, 108 (1st Dep't 2014) (same).

### 2.  Breach of Implied Covenant of Good Faith and Fair Dealing

Next, Plaintiff alleges that Defendant violated multiple implied covenants of good faith and fair dealing between the parties.  Basis for Complaint ¶ 6.  He alleges, for example, that the selection process for the Challenge was "arbitrary," Factual Allegations ¶¶ 59-60, that his application was not accepted even though it had merit, *id.* ¶ 71, that Defendant's requests of Plaintiff would force him "to take on exorbitant and unnecessary costs that would drive him out of business," *id.* ¶ 102, and  that the comments he received had no "basis in fact," *id.* ¶ 104.  Defendant argues that Plaintiff's claim of breach of an implied covenant of good faith and fair dealing should be dismissed as duplicative of his breach of contract claims.  Dkt. No. 48 at 12–

13.  Plaintiff responds that both claims can lie at once, even if they arise out of the same conduct.
Dkt. No. 59 at 10.

The judges of a contest may be under an obligation to review applications in "good faith"
and be liable if they do so in bad faith.  *See African Diaspora*, 109 A.D.3d at 212.  "Under New
York law, parties to an express contract are bound by an implied duty of good faith, but breach
of that duty is merely a breach of the underlying contract."  *Fasolino Foods Co. v. Banca
Nazionale del Lavoro*, 961 F.2d 1052, 1056 (2d Cir. 1992) (internal quotation marks and
citations omitted).  Therefore, "[b]reach of the implied duty of good faith and fair dealing 'is
merely a breach of the underlying contract.'"  *Underdog Trucking, LLC, Reggie Anders v.
Verizon Servs. Corp.*, 2010 WL 2900048, at *6 (S.D.N.Y. July 20, 2010) (quoting *Nat'l Market
Share, Inc. v. Sterling Nat'l Bank*, 392 F.3d 520, 525 (2d Cir. 2004) (citation omitted)).  "New
York law . . . does not recognize a separate cause of action for breach of the implied covenant of
good faith and fair dealing when a breach of contract claim, based upon the same facts, is also
pled."  *Harris v. Provident Life and Acc. Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002).

Plaintiff has not pled facts to support a free-standing claim of breach of the implied
covenant of good faith and fair dealing and even construing his complaint liberally, he has not
alleged breach of such a duty implied in the rules of the contests in which he participated.  He
does not allege that Defendant rejected his applications out of hand.  *See African Diaspora*, 109
A.D.3d at 213 (breach of duty of good faith alleged where defendant sabotaged plaintiff's efforts
to submit an application and then initially sought to deny the application on "various
technicalities").  Defendant assured Plaintiff his application would receive equal treatment,
Factual Allegations ¶ 64, responded to his application by indicating it was reviewed but
determined not to have the "strongest rational[e]" for delivering value, *id.* ¶ 71, met with him to

deliver feedback, *id.* ¶ 84, and then within five weeks of the meeting provided written feedback, *id.* ¶¶ 91-92; Dkt. No. 37-1 at 63–64.  Moreover, that feedback was substantive.  *Id.* ¶¶ 91-92. Plaintiff does not dispute that Defendant exercised discretion, but just disagrees with the exercise of that discretion.  He also alleges that Defendant assured him that his Challenge application would be judged by neutral third parties who are entrepreneurs, seasoned professionals, investors, and/or subject matter experts," and that his application was instead judged by NYU personnel who were not neutral third parties and that Defendant "broke its Challenge contest rules that judges are neutral third parties by having an NYU judge in each of the 3 judging panels," Factual Allegations ¶¶ 64–65, 109.  However, the implied covenant is that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract," and "is in aid and furtherance of other terms of the agreement of the parties."  *S. Telecom Inc. v. ThreeSixty Brands Grp., LLC*, 520 F. Supp. 3d 497, 504 (S.D.N.Y. 2021) (cleaned up).  In the absence of any allegations regarding the content of the agreement that governed the hackathon and the Challenge, Plaintiff is unable to plead conduct that destroyed or injured the rights he had under those agreements.

### 3.    Common Law and Constructive Fraud

Plaintiff alleges that Defendant committed common law and constructive fraud "against him and many other students, alumni, and contestants."  Basis for Complaint ¶ 7.  In order to state a claim for fraud under New York law, a plaintiff must allege "(1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff."  *Budhani v. Monster Energy Co.*, 2021 WL 1104988, at *12 (S.D.N.Y. Mar. 22, 2021) (quoting *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001)).  Further, claims brought under New York law for common law fraud must satisfy the

heightened pleading requirements of Federal Rule of Civil Procedure 9(b), and be pleaded "with particularity."  Fed. R. Civ. P. (9)(b); *see also B & M Linen, Corp. v. Kannegiesser, USA, Corp.*, 679 F. Supp. 2d 474, 481 (S.D.N.Y. 2010).  Accordingly, the plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000) (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)).  "Rule 9(b) also requires a plaintiff to 'allege facts that give rise to a strong inference of fraudulent intent.'"  *Budhani v. Monster Energy Co.*, 527 F. Supp. 3d 667, 687 (S.D.N.Y. 2021) (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006)).

"It is well settled under New York law that 'a contract action cannot be converted to one for fraud merely by alleging that the contracting party did not intend to meet its contractual obligations.'"  *Int'l CableTel Inc. v. Le Groupe Videotron Ltee*, 978 F. Supp. 483, 487 (S.D.N.Y. 1997) (Sotomayor, J.) (quoting *Rocanova v. Equitable Life Assurance Soc'y of the U.S.*, 83 N.Y.2d 603, 614 (1994)).  Although "a promise [that] was made with a preconceived and undisclosed intention of not performing it . . . constitutes a misrepresentation of a material existing fact," *id.*, where a fraud claim "is premised upon an alleged breach of contractual duties and the supporting allegations do not concern representations which are collateral or extraneous to the terms of the parties' agreement, a cause of action sounding in fraud does not lie," *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996) (quoting *McKernin v. Fanny Farmer Candy Shops, Inc.*, 574 N.Y.S.2d 58, 59 (2d Dep't 1991)) (internal quotation marks omitted); *see also N.Y. Univ.*, 662 N.E.2d at 767 ("[W]here a party is merely seeking to enforce its bargain, a tort claim will not lie.").  "[A] simple breach of contract

is not to be considered a tort unless a legal duty independent of the contract itself has been violated." *Clark-Fitzpatrick*, 516 N.E.2d at 193–94 (internal citations omitted).  Thus, "[t]o maintain a claim of fraud in such a situation, a plaintiff must either (i) demonstrate a legal duty separate from the duty to perform under the contract . . .[;] (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract . . .; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Bridgestone/Firestone, Inc.*, 98 F.3d at 20; *see also Int'l CableTel*, 978 F. Supp. at 487.

At most, Plaintiff pleads a claim for breach of contract.  As to the contests, he pleads that Defendant represented that there would be between twenty-five and thirty-five awardees and that his application would be judged fairly and neutrally and in compliance with the rules for the contests, but that Defendant failed to do so.  It gave only twenty-two awards for the Challenge and it did not give him an award for the Hackathon or for the Challenge.  He does not allege any fraudulent misrepresentation collateral or extraneous to the contract, claim a legal duty separate from the duty to perform under the rules of the contests, or seek any kind of special damages unrecoverable as contract damages.  As to the promises of alumni support, Plaintiff fails to plead any facts giving rise to a strong inference of fraudulent intent.  *See Budhani*, 527 F. Supp. 3d at 687.  He pleads that he sought appointments and that, after he was granted a number of appointments, Defendant halted future appointments.  Those claims do not establish that Defendant made any statements that were false when made.  They establish only, and at most, that as a result of circumstances that arose after the statements, Defendant took action inconsistent with those statements.  *See, e.g.*, *Metro. Transp. Auth. v. Triumph Advert. Prods.*, 497 N.Y.S.2d 673, 675 (1st Dep't 1986) (dismissing fraud claim where plaintiff alleged that the

defendant committed "only a breach of the representation of performance implicit in making the bid and a subsequent assurance of performance").

### C.    Breach of Constructive or Fiduciary Trust

Plaintiff alleges that Defendant violated a constructive or fiduciary trust "pursuant to the loco parentis doctrine."  Basis for Complaint ¶ 3.  Plaintiff alleges that "a constructive and/or fiduciary relationship existed, an implied promise of fair treatment by NYU where its employees follow their code of conduct for the services sold to Annabi, yet NYU has abused its power and now [sic] kept such promise repeatedly for unjust enrichment."  *Id.*  Defendant counters that the in loco parentis does not provide a basis for its own claim, and that—even if assessed as a negligence claim—the claim lacks merit.  Dkt. No. 48 at 14–15.

Under New York law, "in loco parentis defines the duty owed within the context of a negligence cause of action, but does not create an independent cause of action."  *O'Reilly v. Archdiocese of N.Y.*, 2021 WL 4706417, at *3 (N.Y. Sup. Ct. Oct. 8, 2021); *see also C.Q. v. Estate of Rockefeller*, 2021 WL 4942802, at *4 (S.D.N.Y. Oct. 21, 2021) ("Rather than operating as its own claim, in loco parentis is a potential duty that a defendant might owe to a plaintiff, thus satisfying the first element of a common-law negligence claim.").  Plaintiff's claim for breach of duty in loco parentis is therefore improper standing on its own.

Even if construed liberally as a negligence claim, Plaintiff's claim fails.  "The elements of a negligence claim under New York law are: '(i) a duty owed to the plaintiff by the defendant; (ii) breach of that duty; and (iii) injury substantially caused by that breach.'"  *Pasternack v. Lab. Corp. of Am. Holds.*, 807 F.3d 14, 19 (2d Cir. 2002) (quoting *Lombard v. Booz–Allen & Hamilton, Inc.*, 280 F.3d 209, 215 (2d Cir.2002)).  Courts in this circuit applying New York law have held that "[i]n New York, schools are under a special duty of in loco parentis."  *Hammond v. Lincoln Tech. Inst., Inc.*, 2012 WL 273067, at *6 (E.D.N.Y. Jan. 30, 2012).  Courts have also

held, however, that a university does not owe a duty of in loco parentis to students enrolled in its programs.  *See Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353, 374 (S.D.N.Y. 2016).  It follows that Defendant could not owe a duty to Plaintiff who had graduated more than ten years before the events in question.  Plaintiff therefore failed to plead that Defendant owed a duty to Plaintiff based in the in loco parentis doctrine.

### D.    Negligent Misrepresentation

Plaintiff also brings a claim of negligent misrepresentation.  Basis for Complaint ¶ 7.  His claim takes the same form as his claims for breach of implied contract and breach of fiduciary duty: he alleges that Defendant made a "false advertisement . . . to select 25 minimum winners" for the Challenge and promised participants "fair competition" and "$300k in prize money," when, in fact, Defendant only selected 22 winners and failed to select him.  Factual Allegations ¶¶ 15, 44, 74.

In order to state a claim for negligent misrepresentation under New York law, a plaintiff must assert: "(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment."  *Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 114 (2d Cir. 2012) (internal quotation marks omitted).

Defendant argues that Plaintiff has failed to plead the existence of a duty to give correct information or that Defendant made any false representations.  Dkt. No. 48 at 20.  Plaintiff's allegations fail for at least two reasons.  First, Plaintiff fails to plead the existence of a duty.  "A party who without sufficient care circulates 'a thought' or launches a statement with 'the explosive power resident in words' is not thereby rendered liable 'in an indeterminate amount for

an indeterminate time to an indeterminate class' of all persons who are exposed to the thought of statement and come to rely upon it." *Frio Energy Partners*, 2023 WL 4211035, at *14 (quoting *Ultramares Corp. v. Touche*, 174 N.E. 441, 444–45 (1931) (Cardozo, J.)). "[L]iability for negligent misrepresentation has been imposed only on those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified." *Kimmell v. Schaefer*, 675 N.E.2d 450, 454 (N.Y. 1996). "To determine whether a special relationship, and in turn, a duty to provide correct information exists, courts look to the following factors: 'whether the person making the representation held or appeared to hold unique or special expertise, whether a special relationship of trust or confidence existed between the parties; and whether the speaker was aware of the use to which the information would be put and supplied it for that purpose.'" *Kimmell*, 89 N.Y.2d at 263 (internal citation and quotation omitted); *see Eidelman v. Sun Prods. Corp.*, 2017 WL 4277187, at *4 (S.D.N.Y. Sept. 25, 2017) (same); *Izquierdo v. Mondelez Int'l Inc.*, 2016 WL 6459832, at *8 (S.D.N.Y. Oct. 26, 2016)) (same).

Plaintiff eschews any allegation of educational malpractice for he is not a student but an alumnus. Factual Allegations ¶¶ 20, 55. Instead, he argues that the relationship between him and Defendant was commercial—if he won an award, he would be required to give a convertible note in exchange for the prize money. *Id.* ¶ 56.; Dkt. No. 59 at 16. But that concession is fatal. He does not allege that Defendant had or appeared to hold any unique or special expertise, nor does he allege that any special relationship of trust or confidence existed between him and Defendant. According to Plaintiff, "NYU's website states it operates 18 different venture contest university wide, many of which are open to alumni and the general public, including minors." Factual Allegations ¶ 12; *see also id.* ¶¶ 26, 35. The relationship between him and Defendant

was at arms-length. When Plaintiff made the decision to enter the Hackathon and the Challenge, the nature of the relationship between him and Defendant was akin to that between buyer and seller, which under New York law "does not give rise to a special relationship." *Izquierdo*, 2016 WL 6459832, at \*8; *see Carter v. Ralph Lauren Corp.*, 2023 WL 4684559, at \*16 (S.D.N.Y. July 20, 2023) (same); *Budhani*, 527 F. Supp. 3d at 684 (same). He thus fails to allege a duty.

Second, under New York law, "[p]romises of future conduct are not actionable as negligent misrepresentations." *Murray v. Xerox Corp.*, 811 F.2d 118, 123 (2d Cir. 1987); *see also Cacchillo v. Insmed, Inc.*, 551 F. App'x 592, 596 (2d Cir. 2014) (summary order) ("a promise of future conduct [is] not actionable as negligent misrepresentation under New York law"); *Shetel Indus. LLC v. Adin Dental Implant Sys., Inc.*, 493 F. Supp. 3d 64, 118–19 (E.D.N.Y. 2020) (citing cases). "[T]he alleged misrepresentation must be factual in nature and not promissory or relating to future events that might never come to fruition." *Hydro Invs., Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20–21 (2d Cir. 2000). Plaintiff alleges a false "promise"— NYU promised that it would treat him fairly and give out awards to at least 25 participants and failed to do so. Basis for Complaint ¶¶ 3, 9, 15. He does not allege a false statement of fact. He thus does not have a claim for negligent misrepresentation.

## IV.    Title VI, the Civil Rights Restoration Act, and Section 1981 Claims

Plaintiff brings claims under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, the Civil Rights Restoration Act of 1987, 20 U.S.C. § 1687, and 42 U.S.C. § 1981. The claims are based on the same set of allegations. Plaintiff alleges that Defendant discriminated against him on the basis of his race, skin color, religion, and national origin in its provision of alumni services and in its administration of the contests. Basis for Complaint ¶¶ 8, 9, 10, 16. He alleges that the Berkley Center's practice of giving the award winner a bottle of champagne is "religiously discriminatory to certain faiths," including his own, Factual Allegations ¶ 47, and

39

that others who were less qualified than he or who had less impressive presentations were given awards while he was not, *id.* ¶¶ 60, 72.  One of those persons was a White woman.  *Id.* ¶ 72. Plaintiff also points out that Assistant Director of the Berkley Center Lafuente was the founder and former CEO of a vodka company, which Plaintiff alleges further evinces religious discrimination.[9]  *Id.* ¶ 47.  He notes that the Challenge is funded by the Rennert Family Foundation, Mr. Ira Rennert (MBA '56), and Mr. Ari Rennert (BS '01), *id.* ¶ 27, and he states that "it is plausible that the NYU's discriminatory actions are influenced by the Rennert Family's well-documented large and consistent financial contributions and support of local and foreign extreme right-wing politicians and organizations who hold prejudiced views, and take negative actions, [sic] against immigrants, Muslims, non-White, and others."  *Id.* ¶ 29.  He also alleges that "White citizens . . . , even those with less qualifications (such as NYU Freshman and others) and those who objectively do not qualify as winners were allowed to be one person teams, were accepted into NYU programs and declared winners in NYU competitions, were not barred from using NYU Stern services and did not have additional conditions placed against them whereas [Plaintiff], due to his protected characteristics of race, religion, national origin, age,[10] color, did have conditions placed on him and was barred from Berkley Center."  Basis for Complaint ¶ 15.

### A.    Title VI

Title VI of the Civil Rights Act of 1964 provides:  "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  42 U.S.C. § 2000d.  The statute "s[eeks] to accomplish two related, but

---

[9] Plaintiff's allegations of religious discrimination are not cognizable under the statutes under which Plaintiff brings his claims.

[10] As noted, *see supra* n.5, Plaintiff concededly has failed to follow the procedural requirements of the Age Discrimination Act and therefore has no ADA claim.  Dkt. No. 59 at 27.

nevertheless somewhat different, objectives.  First, Congress wanted to avoid the use of federal resources to support discriminatory practices; second, it wanted to provide individual citizens effective protection against those practices."  *Cannon v. Univ. of Chi.*, 441 U.S. 677, 704 (1979); *see Sternberg v. U.S.A. Nat. Karate-Do Fed'n*, 123 F. Supp. 2d 659, 664 (E.D.N.Y. 2000) (citing *Cannon*, 441 U.S. at 703).  The statute serves to "condition an offer of federal funding on a promise by the recipient not to discriminate, in what amounts essentially to a contract between the Government and the recipient of the funds," *Gebser v. Lago Vista Indep. School Dist.*, 524 U.S. 274, 286 (1998), and provides an "administrative mechanism for terminating federal financial support for institutions engaged in prohibited discrimination," *Cannon*, 441 U.S. at 696.

Title VI creates a private right of action to sue for intentional discrimination.  *Alexander v. Sandoval*, 532 U.S. 275, 279, (2001) ("[P]rivate individuals may sue to enforce . . . Title VI and obtain both injunctive relief and damages."); *see Simpson ex rel. Simpson v. Uniondale Union Free Sch. Dist.*, 702 F. Supp. 2d 122, 133 (E.D.N.Y. 2010) (quoting *Alexander*, 532 U.S. at 279).  "In order to establish a Title VI violation, a plaintiff must show, through specific factual allegations, that '(1) the defendant discriminated on a prohibited basis; (2) the discrimination was intentional; and (3) the discrimination was a substantial or motivating factor for the defendant's action.'"  *HB v. Monroe Woodbury Cent. School Dist.*, 2012 WL 4477552, at *14 (S.D.N.Y. Sept. 27, 2012) (quoting *Faccio v. Eggleston*, 2011 WL 3666588, at *9 (N.D.N.Y. Aug. 22, 2011); *see Yang v. Eastman Sch. of Music*, 2022 WL 1040418, at *2 (2d Cir. 2022) (summary order); *Bibliotechnical Athenaeum v. Am. Univ. of Beirut*, 527 F. Supp. 3d 625, 632 (S.D.N.Y. 2021), *aff'd*, 2022 WL 710896 (2d Cir. Mar. 10, 2022) (summary order).  "Typically, facts that support an inference of racial animus relate to long-term practices of discrimination, or to comments made by individuals suggesting that they harbor racial biases."  *HB*, 2012 WL

4477552, at *14 (quoting *Lopez v. Bay Shore Union Free Sch. Dist.*, 668 F. Supp. 2d 406, 414 (E.D.N.Y. 2009)).  A "'naked allegation' . . . cannot demonstrate a plausible entitlement to Title VI relief."  *Kajoshaj v. N.Y.C. Dep't of Educ.*, 543 F. App'x 11, 14 (2d Cir. 2013) (quoting *Albert v. Carovano*, 851 F.2d 561, 572 (2d Cir.1988)).

Plaintiff alleges that he was discriminated against based on his race and his nation of origin in violation of Title VI.  He does not allege that Defendant made any remarks indicating animus on the basis of race or national origin or otherwise evinced such animus.  The comments that Plaintiff received on his submissions are race- and national-origin neutral.  Reviewers for the Hackathon commented that Activate's mission is "laudable," "commendable," and "intriguing," but also that the application is "broad and vague," and "early stage, requiring refinement and greater precision."  Dkt. No. 37-1 at 65.  One reviewer responded that, "it's unclear what the solution is, how it will make money, how it will work, and what it will do.  It's also unclear how it will even address any of the larger problems that were posed in the application.  There are no designs or examples given."  *Id.*  Another reviewer stated that, "it's not clear from the application what the solution actually is or how it would be differentiated from existing platforms (beyond high level review of its charitable revenue model)."

The only support Plaintiff offers for that claim is that a White woman received an award while he did not, Factual Allegations ¶ 72, and the statement that it is plausible that NYU was motivated by discriminatory animus because it received funds from the Rennert family, *id.* ¶ 29. That is an insufficient basis to support a Title VI claim.  Plaintiff does not allege that the applications indicated the race of the person submitting the application.  Moreover, the awardee Plaintiff highlights was only one of the allegedly twenty-two persons who received a Challenge award—twenty-one other persons also received that award.  *Id.* ¶ 72.  Plaintiff does not allege

the race or the national origin of those individuals.  Nor does he allege facts to support that

Anderson, the White female winner, was similarly situated to him.  *See Johnson v. N.Y. Univ.*,

800 Fed. Appx. 18, 21 (2d Cir. 2020) ("While a plaintiff may 'raise[ ] an inference of

discrimination by showing that [he] was subjected to disparate treatment' in comparison to

others, the comparators must be 'similarly situated' to the plaintiff 'in all material respects.'"

(quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000) (internal quotation marks

omitted))).  To the contrary, what he alleges demonstrates that they are not similarly situated;

Anderson submitted a proposal for a company that produced already available-for-sale resistance

bands worn on a user's foot during exercise, Dkt. No. 37-1 pp. 53–54, while Plaintiff's enterprise

Activate was a social media website that is not yet public, *id.* p. 10.  *See Kajoshaj*, 543 Fed.

App'x. at 14 (upholding dismissal of Title VI claim where "Plaintiffs [did] not, for instance,

assert that any defendant referenced their religion or national origin, much less that they did so in

a derogatory manner" and where reports of bad grades "provide a much more plausible

explanation for [defendant's] decision not to promote" plaintiff to sixth grade).  NYU was not

required to treat the two applications as equivalent.  As to the Rennerts, there is no support for

the notion that the fact that a person might give to an organization that is conservative or, for that

matter, is liberal, means that he or she is a bigot.  Someone can support a person of either right-

or left-wing sympathies without at the same time being prejudiced on grounds of race.  Even if

such an inference could be drawn, there also is no basis for imputing the animus of a contributor

to the person to whom he or she contributes.[11]  *See Kregler v. City of New York*, 987 F. Supp. 2d

357, 369 (S.D.N.Y. 2013) (declining to impute racial animus where there were multiple "layers

---

[11] There is also no allegation that any member of the Rennert family had any involvement in the contest decisions.  Factual Allegations ¶ 29.

of attenuation"). As Plaintiff himself seems to acknowledge, his assertions about the Rennerts add nothing to his complaint.  Factual Allegations ¶ 29

### B.    Civil Rights Restoration Act

The Civil Rights Restoration Act of 1987, 20 U.S.C. § 1687, was passed to respond to the Supreme Court's decision in *Grove City College v. Bell*, which held that Title IX of the Education Amendments Act of 1972 ("Title IX"), 20 U.S.C. § 1681 *et seq.*, was "program specific"—meaning that the receipt of grants by some students at Grove City College did not trigger coverage of the entire institution under Title IX.  466 U.S. 555 (1984).  The Act "provides that if any part of an educational institution received federal funds, the institution as a whole must comply with Title IX's provisions."  *McCormick ex rel. McCormick v. Sch. Dist. of Mamaroneck*, 370 F.3d 275, 287 (2d Cir. 2004).  "The congressional debate leading to the passage of [the Civil Rights Restoration Act] demonstrates concern by members of Congress about ensuring equal opportunities for female athletes."  *Id.*  "Title IX claims alleging disparate treatment based on gender are informed by racial discrimination claims under Title VI. Therefore, under either statute, a plaintiff must show that: (1) the defendant was discriminated against, (2) the discrimination was intentional, and (3) the discrimination was a 'motivating factor' in the defendant's actions."  *Pungitore v. Barbera*, 506 Fed. App'x. 40, 42 (2d Cir. 2012) (internal citation omitted); *see also Gebser v. Lago Vista Ind. School Dist.*, 524 U.S. 274, 286 (describing Title VI and Title IX as "parallel . . . except that [Title VI] prohibits race discrimination, not sex discrimination, and applies in all programs receiving federal funds, not only in education programs").  Plaintiff must "must plead facts supporting a plausible inference that gender bias was a motivating factor" in the alleged discriminatory conduct.  *Id.*

Construing Plaintiff's Amended Complaint broadly as bringing a claim under Title IX, Plaintiff again fails to plead facts supporting a plausible inference that gender bias was a

motivating factor in Defendant's conduct.  Plaintiff fails to allege that he was treated differently than those who but for their gender were similarly situated.  He alleges simply that he was male and that one of the twenty-two people who received an award was a woman who he claims was less qualified.  That is not alone enough to make out a claim for discrimination on the basis of gender.  *See, e.g.*, *Pungitore*, 506 Fed. App'x. at 42–43 (affirming dismissal of a Title IX claim when plaintiff was not allowed to transfer into a double-accelerated math class, even where plaintiff showed that the math class was comprised only of males, because plaintiff's claim was supported by "conclusory allegations of discrimination" that did not "give rise to a reasonable inference that [defendant] was motivated by discriminatory animus"); *Manolov v. Borough of Manhattan Cmty. College*, 952 F. Supp. 2d 522, 532 (S.D.N.Y. 2013) (granting motion to dismiss Title IX claims because plaintiff did not "allege that any defendant referred to his race or gender, nor [did] he recite any other fact from which race- or gender-based discriminatory intent reasonably could be inferred").

### C.     Section 1981

Claims of discrimination brought under Section 1981 are evaluated under the same standard as claims brought under Title VII.  *See Vill. of Freeport v. Barrella*, 814 F.3d 594, 616 (2d Cir. 2016).  "To establish a claim under [Section] 1981, a plaintiff . . . must show: (1) that [he] is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerning one of activities enumerated in [Section] 1981." *Lauture v. Int'l Bus. Machs. Corp.*, 216 F.3d 258, 261 (2d Cir. 2000).  The activities enumerated in Section 1981 are those "to make and enforce contracts, to sue, be parties, [and to] give evidence . . . ."  42 U.S.C. § 1981(a).  "The phrase 'make and enforce contracts,' as used in § 1981, encompasses 'the making performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.'

Therefore, the plaintiff may state a § 1981 claim by alleging that the University breached a contract with him, and that the breach was motivated by racial prejudice." *Rodriguez v. N.Y. Univ.*, 2007 WL 117775, at \*4 (S.D.N.Y. Jan. 16, 2007) (internal citation omitted) (quoting 42 U.S.C. § 1981(b)).  Section 1981 provides a cause of action for discrimination on the basis of race, which includes 'ancestry or ethnic characteristics,' but not for discrimination based 'solely on the place or nation of [the plaintiff's] origin.'" *Nadesan v. Citizens Fin. Grp.*, 673 Fed. App'x. 47, 49 (2d Cir. 2016) (summary order) (quoting *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987)); *accord Anderson v. Conboy*, 156 F.3d 167, 170 (2d Cir. 1998).  In order to survive a motion to dismiss, a plaintiff bringing a Section 1981 claim "must plausibly allege that (1) the [defendant] took adverse action against [her] and (2) [her] race . . . was a motivating factor in the [defendant's] decision." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015) (outlining requirements for discrimination claim under Title VII).  A plaintiff "[does] not plead sufficient facts to state a plausible claim for relief under 42 U.S.C. § 1981" where the "allegations of discriminatory intent were wholly conclusory." *Zavalidroga v. Cote*, 395 Fed. App'x. 737, 740 (2d Cir. 2010).

Plaintiff's claim under Section 1981 fails for similar reasons.  Plaintiff fails to allege that he was treated differently than those who but for their race were similarly situated or to make any allegation of racial animus.  *See Albert*, 851 F.2d at 573; *see also Rodriguez*, 2007 WL 117775, at \*5 ("[Plaintiff] has not indicated that any of the professors or administrators involved in the disciplinary proceedings made reference to the fact that he is Hispanic.  Nor has he indicated any disparities between the treatment of Hispanics as opposed to similarly situated white students with respect to NYU disciplinary proceedings.").

**V.      New York Deceptive Practices Act and New York False Advertising Act Claims**

Plaintiff next claims that Defendant's actions violate New York General Business Law

Sections 349 and 350.  Section 349 of the GBL prohibits "[d]eceptive acts or practices in the

conduct of any business, trade or commerce or in the furnishing of any service in this state."

N.Y. Gen. Bus. Law § 349(a).  Section 350 prohibits "[f]alse advertising in the conduct of any

business, trade or commerce or in the furnishing of any service in this state."  *Id.* § 350.  "The

only difference between the two is that Section 350 more narrowly targets deceptive or

misleading advertisements, while Section 349 polices a wider range of business practices."

*Cline v. TouchTunes Music Corp.*, 211 F. Supp. 3d 628, 636 (S.D.N.Y. 2016).  To state a claim

under either Section 349 or 350, "a plaintiff must allege: (1) that the defendant's acts were

consumer oriented, (2) that the acts or practices are deceptive or misleading in a material way,

and (3) that the plaintiff has been injured as a result."  *Budhani*, 527 F. Supp. 3d at 675; *see*

*Orlander v. Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015) (at the pleading stage, plaintiff must

allege that "on account of a materially misleading practice, [plaintiff] purchased a product and

did not receive the full value of [their] purchase." (citation omitted)).

"To satisfy the 'consumer-oriented' prong, the plaintiff must 'demonstrate that the acts or

practices have a broader impact on consumers at large.'"  *Manchanda v. Navient Student Loans*,

2020 WL 5802238, at *5 (S.D.N.Y. Sept. 29, 2020) (quoting *Oswego Laborers' Local 214*

*Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 744 (N.Y. 1995)).  "Private

contract disputes, unique to the parties . . . [will] not fall within the ambit of the statute."

*Oswego*, 647 N.E.2d at 745.  Further, in order to be considered misleading, the challenged act or

practice must be "likely to mislead a reasonable consumer acting reasonably under the

circumstances."  *Id.*  In determining whether a statement is deceptive, courts analyze "challenged

advertisement as a whole, including disclaimers and qualifying language," *Mantikas v. Kellogg*

*Co.*, 910 F.3d 633, 636 (2d Cir. 2018), and "context is crucial," *Fink v. Time Warner*, 714 F.3d

739, 742 (2d Cir. 2013); *see also Izquierdo v. Panera Bread Co.*, 450 F. Supp. 3d 453, 461

(S.D.N.Y. 2020) ("Courts 'view each allegedly misleading statement in light of its context on the

product label or advertisement as a whole.'" (quoting *Wurtzburger*, 2017 WL 6416296, at *3));

*Steele v. Wegmans Food Markets, Inc.*, 472 F. Supp. 3d 47, 50 (S.D.N.Y. 2020) (evaluating the

"messages on the container . . . in sequence" in order to "analyze [their] total effect" on the

consumer).  The Second Circuit has held, "[p]laintiffs must plausibly allege that a significant

portion of the general consuming public or of targeted consumers, acting reasonably in the

circumstances, could be misled."  *Jessani v. Monini N. Am., Inc.*, 744 F. App'x 18, 19 (2d Cir.

2018) (internal quotation marks and citation omitted).  In order to satisfy the third prong, the

plaintiff must show that "the deceptive act or practice . . . caused actual, although not necessarily

pecuniary, harm."  *Oswego*, 647 N.E.2d at 745.

Plaintiff alleges that Defendant falsely stated on its website that between twenty-five and

thirty-five teams would be accepted when, in fact, Defendant only gave twenty-two Challenge

awards.  He alleges that, as a result, Defendant statistically reduced the changes that he, or any

other "fee-paying contestant" would receive an award.  Factual Allegations ¶ 74.  Notably,

Plaintiff does not contend that Defendant capped the number of awards it would give at twenty-

two, but only that on the single occasion, it in fact did not give more than twenty-two awards.

Plaintiff's theory is not that otherwise well-qualified applicants were denied an award because

Defendant limited the number of awards it would give below what it represented.  His theory is

that he was deprived of a portion of the value of his entry fee—had Defendant in fact given more

than twenty-two awards then he or one of the other fee-paying contestants would have received

an award.  He claims that "had [he] known that NYU was promoting its products deceptively,

[he] would have attended a different university and not paid or applied to its contests." Dkt. No. 59 at 29.

Plaintiff's allegations do not support that Defendant made a materially misleading statement. No reasonable consumer acting reasonably under the circumstances plausibly could have understood Defendant's statement to mean that, no matter the circumstances, Defendant would select between twenty-five and thirty-five award winners and that, therefore, the odds of any one participant receiving the award would be a function of the number of awards given. *See Passman v. Peloton Interactive, Inc.*, 2023 WL 3195941, at * 9 (S.D.N.Y. May 2, 2023) ("To be sure, the nature of the product can influence how a reasonable consumer is expected to interact with the allegedly false statement.") (citing *Mantikas*, 910 F.3d at 633). It cannot be understood to mean that, even if only twenty-two applicants merited an award, Defendant would nonetheless give an award to three other contestants. The very website page to which Plaintiff points refers to the Challenge as a "venture competition" that is "open to the global NYU community" and was "designed specifically to help high-potential founders." It indicates that the Challenge was a contest of skill not of chance. Further, the context surrounding the advertisement highlighted by Plaintiff makes even more clear that Plaintiff was entering a highly competitive contest of skill, and that winning would require an application of a very specific nature. The Challenge advertises its selection criteria as limited to "1) Ventures that are world positive / solving a worthwhile problem, 2) capable of demonstrating progress through a working prototype, traction, or other means, 3) having the potential to achieve tremendous scale, 4) having with [sic] strong founding teams," Factual Allegations ¶ 58, and that "[t]he Challenge has always been a competitive program . . . ." *Id.* ¶ 74. Thus, it could not be that any consumer would understand that Defendant would necessarily give twenty-five awards no matter the merit of the application

or that, regardless of the merits of any particular contestant's application, he or she would have an improved chance of being given an award.  The very materials to which Defendant points makes clear that the number of awards to be given would be a function of the applications.  If only twenty-five persons submitted applications, Defendant would not be required to give each applicant an award simply by virtue of that applicant being one of the twenty-five.

## VI. Lanham Act

Plaintiff alleges that Defendant violated Section 43(b), 15 U.S.C. § 1125(a)(1)(B), of the Lanham Act, which creates liability for false advertising.  Section 43(b) prohibits the "use[ ] in commerce [of] any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities."  *Id.*  The law provides that any person engaged in such act "shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act." *Id.*  To plead a claim under Section 43(b), a plaintiff with a statutory cause of action must allege: "(1) a false or misleading statement (2) in connection with commercial advertising or promotion that (3) was material, (4) was made in interstate commerce, and (5) damaged or will likely damage the plaintiff."  *Sussman-Automatic Corp. v. Spa World Corp.*, 15 F. Supp. 3d 258, 269 (E.D.N.Y. 2014) (quoting *C=Holdings B.V. v. Asiarim Corp.*, 992 F.Supp.2d 223, 242 (S.D.N.Y. Dec. 16, 2013)).

The courts, however, have never read the words "any person" literally to mean any person who claims to have been factually injured as a result of a violation of Section 43(b). *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014).  The cause of action under Section 43(b) extends only to those whose interests fall within the "zone of

interests" protected by Section 43(b) and "whose injuries are proximately caused by violations of the statute." *Id.* at 131–32.  To satisfy the zone of interest requirement, a plaintiff must allege an "injury to a commercial interest in reputation or sales." *Id.* at 132.  To satisfy the proximate cause requirement, a plaintiff must show that the economic or reputational injury "flow[s] directly from the deception wrought by the defendant's advertising," which occurs "when deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 133.

Plaintiff does not allege facts to demonstrate that he "comes within the class of plaintiffs whom Congress authorized to sue" under Section 43(b).  He does not allege an injury to sales from what he claims was Defendant's false advertising.  His business had no sales.  Nor does he allege an injury to his reputation or that of his fledgling company from Defendant's conduct.  At best, he alleges that his business would have had the ability to earn a reputation had it received an award or had he received more support.  But that injury—to the extent it can be called that— would have stemmed not from Defendant's advertising but from Defendant's decision not to give Activate an award and, in any event, is based on an extraordinarily attenuated chain of causation that would require not only that he have won an award but that it gained for him a reputation.  He therefore has no claim under the Lanham Act.

## VII.    Defendant's Request for Rule 11 Sanctions

Defendant requests that the Court impose sanctions upon Plaintiff under Federal Rule of Civil Procedure 11 and the Court's inherent powers. Dkt. No. 48 at 36.  The motion is denied.

Defendant makes no showing that they have satisfied Rule 11's procedural requirements. Under Federal Rule of Civil Procedure 11(c)(2), "[a] motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)."  Fed. R. Civ. P. 11(c)(2).  The Rule goes on to provide that "[t]he motion must be served under Rule 6, but it must not be filed or be presented to the court if the challenged paper,

claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." *Id.* Defendant did not file its Rule 11 motion separately and has made no showing that it gave Plaintiff the opportunity to correct the allegedly offending conduct. Where Rule 11(c)(2) has not been satisfied, the court may not grant a motion to impose Rule 11 sanctions. *See Lawrence v. Richman Grp of CT LLC*, 620 F.3d 153, 158 (2d Cir. 2010).

The Court has inherent power to impose sanctions. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991). "[W]hen there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power." *Id.* "In order to impose sanctions pursuant to its inherent power, a district court must find that: (1) the challenged claim was without a colorable basis and (2) the claim was brought in bad faith, i.e., motivated by improper purposes such as harassment or delay." *Enmon v. Prospect Capital Corp.*, 675 F.3d 138, 143 (2d Cir. 2012). "'The Supreme Court [has] cautioned that, because of the "very potency" of a court's inherent power, this power should be exercised "with restraint and discretion."'" *(RC) 2 Pharma Connect, LLC v. Mission Pharmacal Co.*, 2022 WL 4234552, at *6 (S.D.N.Y. Sep. 14, 2022) (quoting *Wood v. Brosse U.S.A., Inc.*, 149 F.R.D. 44, 49 (S.D.N.Y. 1993) (quoting in turn *Chambers*, 501 U.S. at 44)). "'To circumscribe the exercise of this power with reasonable limits, the Second Circuit has "always required a particularized showing of bad faith to justify the use of the court's inherent powers."'" *(RC) 2 Pharma Connect, LLC*, 2022 WL 4234552, at *6 (quoting *Wood*, 149 F.R.D. at 49 (quoting in turn *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 948 F.2d 1338, 1345 (2d Cir. 1991))). Defendant does not come close to satisfying that standard.

Accordingly, the motion for sanctions is denied.[12]

## CONCLUSION

Defendant's motion to dismiss all of Plaintiff's claims is GRANTED WITHOUT

PREJUDICE.[13]  Plaintiff shall have 60 days from the date of this Order to file a further amended

complaint consistent with the holdings in this Order.  If an amended complaint is not filed within

60 days, the Court will dismiss the action and close the case.

---

[12] Defendant requests that the "Additional Allegations in Support" section of Plaintiff's amended complaint be stricken pursuant to Federal Rule of Civil Procedure 12(f), because the allegations contained therein are "highly inappropriate and inflammatory."  Dkt. No. 48 at 35.  The request is denied.  *Id.*  Federal Rule of Civil Procedure 12(f) provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  "Federal courts have discretion in deciding whether to grant motions to strike."  *Capri Sun GmbH v. Am. Beverage Corp.*, 414 F. Supp. 3d 414, 423 (S.D.N.Y. Oct. 29, 2019) (quoting *Orientview Techs. LLC v. Seven for All Mankind, LLC*, 2013 WL 4016302, at *3 (S.D.N.Y. Aug. 7, 2013)).  In order to succeed on a motion to strike, the movant must demonstrate that "(1) no evidence in support of the allegations would be admissible; (2) the allegations have no bearing on the relevant issues; and (3) permitting the allegations to stand would result in prejudice to the movant."  *Roe v. City of New York*, 151 F. Supp. 2d 495, 510 (S.D.N.Y. 2001).  "[M]otions to strike under Rule 12(f) are generally 'disfavored and granted only if there is strong reason to do so.'"  *Sweigert v. Goodman*, 2021 WL 603069, at *1 (S.D.N.Y. Feb. 16, 2021) (quoting *Anderson News, L.L.C. v. Am. Media, Inc.*, 2013 WL 1746062, at *3 (S.D.N.Y. Apr. 23, 2013)); *Beatie & Osborn LLP v. Patriot Sci. Corp.*, 431 F. Supp. 2d 367, 398 (S.D.N.Y. 2006) ("The Second Circuit has made clear that district courts should be wary when deciding whether to grant a Rule 12(f) motion on the ground that the matter is impertinent and immaterial.") (citing *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976)).  The Court declines to exercise its discretion to strike.  The Complaint has been and will remain available on the public docket regardless of the Court's decision and Defendant articulates no continuing prejudice it will suffer by denying its motion.

[13] The Second Circuit has held that a district court should not dismiss a pro se complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir.1999) (alteration omitted) (quoting *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991)).

The Clerk of Court is respectfully directed to close Dkt. No. 46.

SO ORDERED.

Dated: September 29, 2023
     New York, New York

                                 LEWIS J. LIMAN
                         United States District Judge